UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RICARDO C., <br><br> Plaintiff, <br><br> v. <br><br> ANDREW M. SAUL, <br><br> Defendant. | No. 18 CV 4807 <br><br> Judge Manish S. Shah |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Ricardo C.[1] appeals the Social Security Administration's denial of his application for disability benefits.[2] An ALJ heard plaintiff's case and denied his application for benefits because the ALJ concluded that plaintiff is not disabled. Ricardo C. petitioned the Appeals Council for review of the denial, but the Council denied his request, resulting in his appeal to this court. The Commissioner moves for summary judgment. For the reasons explained below, the motion is denied, and the ALJ's decision is reversed and remanded.

**I.   Legal Standard**

Because the Appeals Council denied plaintiff's request for review, the ALJ's ruling is the Commissioner's final decision for review. *See Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019). The ALJ's ruling stands unless the decision is not

---

[1] I refer to Ricardo C. only by his first name and the first initial of his last name to comply with Internal Operating Procedure 22.

[2] The complaint names Nancy A. Berryhill as the defendant, but she has since been replaced by Andrew M. Saul as the Commissioner, so he is the proper defendant. *See* Fed. R. Civ. P. 25(d).

supported by substantial evidence or is the result of a legal error. *L.D.R. by Wagner v. Berryhill*, 920 F.3d 1146, 1151 (7th Cir. 2019). Substantial evidence means that which a reasonable person could accept as enough to support the conclusion. *Id.* at 1151–52. I do not reweigh evidence, resolve conflicts, determine credibility, or otherwise substitute my judgment for that of the ALJ. *Id.* at 1152. Though my review is deferential, the ALJ "must build an 'accurate and logical bridge from the evidence to his conclusion'" and "explain [his] decision in such a way that allows [me] to determine whether [he] reached [his] decision in a rational manner, logically based on [his] specific findings and the evidence in the record." *McKinzey v. Astrue*, 641 F.3d 884, 889–90 (7th Cir. 2011) (citation omitted).

## II. Background

In August 2014, Ricardo C. applied for Social Security disability insurance benefits and supplemental security income based on certain physical and mental impairments, including schizophrenia. A.R. 186, 219.[3] After his application was denied, reconsidered, and denied again, he filed a written request for a hearing. A.R. 111, 123, 126. The ALJ held a hearing on July 13, 2016. A.R. 44.

At the hearing, plaintiff testified that his depression prevents him from working and that on days when he is symptomatic, he just sits on the porch while smoking cigarettes and drinking coffee. A.R. 52–53. He said he was taking medication for his depression, which helped, but a recent move interrupted his access to the

---

[3] Page numbers are taken from the CM/ECF header at the top of filings. Facts are taken from the administrative record, [10]. Bracketed numbers refer to entries on the district court docket.

2

medication and the medication made him restless. A.R. 53–54. Plaintiff also reported having schizophrenia and hearing voices. A.R. 54. He said the schizophrenia medication had negative side effects too—it slowed him down, made his concentration "bad," caused him to "drift off" or "blank out," and resulted in restlessness. A.R. 54–55. He said the voices he hears—which tell him to do things—come and go, and sometimes it feels like he hears them every day. A.R. 54. Plaintiff reported visual hallucinations too. A.R. 62. He also testified about other limitations, including anxiety, thyroid issues, diabetes, and high blood pressure. A.R. 56–57. When questioned about his daily activities, he said his godmother cooks his meals for him since he can't concentrate and has tremors. A.R. 59. He also said he doesn't make his bed, clean, do laundry, read, or watch television. A.R. 59–60.

The vocational expert testified next. The ALJ asked the expert hypotheticals premised on a 48-year-old man with a high school education and plaintiff's work experience (as a forklift operator) doing work at a medium level of exertion that was limited to (1) "simple, routine, repetitive tasks," (2) "performed in a work environment free of fast-paced production requirements," (3) "involving only simple work-related decisions," (4) "with few if any work place changes," and (5) having "only brief and superficial interaction with the public" and co-workers. A.R. 65–66. First, the ALJ asked whether the hypothetical man could do plaintiff's earlier job as a forklift operator, and the expert said no. A.R. 66. Next, he asked whether this hypothetical man could do other "medium, unskilled jobs" in the economy, and she said yes—he could be a hospital cleaner, a janitor, or a hospital food service worker. A.R. 66. Then

3

the ALJ asked whether there were any medium, unskilled jobs for the hypothetical man if he was going to miss two days of work each month, and the expert said no. A.R. 66–67. Those missed days were "job preclusive." A.R. 67. Last, the ALJ asked whether there were any medium, unskilled jobs for the hypothetical man if he was going to be off task for 20 percent of the work day, and the expert replied that no, that would be job preclusive too. A.R. 67. The expert testified that "[t]he standard is approximately, for these types of jobs, unskilled, you have to be … on task at least 85 percent of the time." A.R. 67.

Under the Social Security Act, a person is disabled if he is unable "to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A). The ALJ found that plaintiff is not disabled. A.R. 24. He came to this conclusion by following the five-step evaluation process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). At Step 1, the ALJ found that plaintiff has not engaged in substantial gainful activity since the alleged onset date of his disability. A.R. 26. At Steps 2 and 3, the ALJ determined that plaintiff has severe impairments of anxiety, schizophrenia, and polysubstance abuse, but that the impairments do not meet the requirements to establish a presumptive disability. A.R. 26–28. At Steps 3 and 4, the ALJ found that plaintiff has the residual functional capacity to do "medium work," so long as it is restricted to "simple, routine and repetitive tasks[;] performed in a work environment free of fast paced production requirements; involving only

4

simple, work-related decisions; and with few, if any work place changes" and plaintiff "should have only brief and superficial interaction with the public and co-workers." A.R. 28–29. Given this RFC, the ALJ concluded that plaintiff cannot perform his past relevant work as a forklift operator. A.R. 35. And at Step 5, the ALJ found that plaintiff's age, education, work experience, and RFC are compatible with jobs that exist in sufficient numbers in the economy (the hospital cleaner, janitor, and hospital food service worker positions that the expert mentioned), so plaintiff is not disabled. A.R. 35–36.

## III. Analysis

### A. RFC Assessment

Ricardo C. argues that the ALJ did not adequately consider evidence of his low energy, sleepiness, and difficulty concentrating when crafting the RFC. "[B]oth the hypothetical posed to the [vocational expert] and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record." *Winsted v. Berryhill*, 923 F.3d 472, 476 (7th Cir. 2019) (quoting *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015)). "This includes any deficiencies the claimant may have in concentration, persistence, or pace." *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014).

The ALJ recognized that plaintiff is moderately limited in "concentration, persistence, or pace." A.R. 28, 34.[4] The ALJ didn't quite explain plaintiff's specific

---

[4] At one point in the ALJ's recitation of the evidence, he summarized an October 2014 exam and wrote that "[t]he objective findings do not support poor concentration," A.R. 30, but it is not clear whether he was referring to that particular exam or the objective evidence in general. If the latter, the ALJ did not build a logical bridge to that conclusion, because it conflicts with his finding that plaintiff has a moderate limitation in concentration, persistence and pace and with the undiscounted opinion of Dr. Williams.

5

limitations, but he gave "great weight" to the opinion of Dr. Williams, a non-examining state agency psychological consultant. A.R. 34. Dr. Williams concluded that plaintiff "has an impairment in ability to sustain attention and concentration," opined that plaintiff "appears to be able to complete [a] normal workweek with moderate interruptions from psychologically based symptoms," and observed "moderate impairment in maintaining attention and concentration adequately for 2-hour periods in an 8-hour work day." A.R. 34.

In justifying his RFC assessment, the ALJ explained that he "accommodated [plaintiff's] moderate limitations especially in concentration, persistence or pace by limiting him to a work environment free of fast paced production requirements and involving only simple work related decisions and few if any work place changes." A.R. 34–35. But none of those restrictions address plaintiff's moderate limitation on concentration, persistence, and pace. *See DeCamp v. Berryhill*, 916 F.3d 671, 676 (7th Cir. 2019) ("[T]here is no basis to suggest that eliminating jobs with strict production quotas or a fast pace may serve as a proxy for including a moderate limitation on concentration, persistence, and pace."); *Yurt*, 758 F.3d at 858–59 ("[W]e have repeatedly rejected the notion that a hypothetical like the one here confining the claimant to simple, routine tasks and limited interactions with others adequately captures temperamental deficiencies and limitations in concentration, persistence, and pace."). Suppose plaintiff got a job as a janitor that required him to clean just one room during his shift. If he was unable to concentrate and stay on task—actually clean—then he couldn't do the job, no matter how slow a pace, how simple the

6

required decisions, and how few the changes. In other words, "[t]he ability to stick with a given task over a sustained period is not the same as the ability to learn how to do tasks of a given complexity." *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010).

The ALJ's failure to account for plaintiff's concentration, persistence, and pace limitation in the RFC is highlighted by the vocational expert's testimony that someone like plaintiff couldn't do any of the jobs that the ALJ found to be available to him if he couldn't be on task for at least 85 percent of the work day. *See Winsted*, 923 F.3d at 477 (noting that the ALJ disregarded the vocational expert's testimony that "an individual who would either be off task 20% of the workday or would have two unscheduled absences per month" could not sustain employment).[5] Eighty-five percent of an 8-hour workday is 6 hours and 48 minutes. That's how long plaintiff needs to be able to concentrate and stay on task in order to hold the jobs that the ALJ said he could hold. Dr. Williams's opinion—which the ALJ accepted—was that plaintiff has "moderate" impairment in paying attention "for 2-hour periods in an 8-hour work day." A.R. 34. That someone with that level of concentration impairment can reasonably be expected to stay on task for 85 percent of his shift is doubtful. *See O'Connor–Spinner v. Colvin*, 832 F.3d 690, 698 (7th Cir. 2016) (suggesting that "a moderate impairment on maintaining concentration, persistence, and pace equates

---

[5] The ALJ's omission of the limitation may be excused if "the vocational expert was independently familiar with the claimant's medical file," *Lanigan v. Berryhill*, 865 F.3d 558, 565 (7th Cir. 2017), but there is no evidence of that here. The vocational expert testified that she had "reviewed the file and exhibits" and "familiarized [herself] with [Ricardo's] vocational background," A.R. 64, but it is not clear that the "file" necessarily included the complete medical history.

7

to being off task at least 15% of the time," which means that a vocational expert's testimony that the claimant would be "'very unlikely' to maintain employment if she was off task 15% or more of the time" means claimant "is essentially unemployable" and "at least calls into question the ALJ's assertion that eliminating jobs which require strict production quotas or a fast pace sufficiently accounts for a moderate limitation on concentration, persistence, and pace").

Because the ALJ's RFC assessment didn't take plaintiff's moderate limitation in concentration, persistence, and pace into account, the Commissioner's decision is reserved and remanded. *See Winsted*, 923 F.3d at 478–79.

### B. Credibility

Plaintiff's other arguments concern the ALJ's credibility finding, which can be overturned only if it is "patently wrong." *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013). In making his credibility determination, the ALJ was permitted to consider, among other things, plaintiff's daily activities and treatment. *See* 20 C.F.R. § 404.1529(c)(3)(i), (iv)–(v).

With respect to daily activities, the ALJ found that plaintiff overstated his limitations. A.R. 32–33. Plaintiff said that he sits on the porch and smokes cigarettes and drinks coffee and that he does not do chores. A.R. 29, 32. But Annie Walker (a family member, [19] at 2) submitted a third-party report saying that plaintiff's daily activities include walking around the yard, playing on the computer, reading, and watching television. A.R. 33, 236, 240. She also said he cleans, does laundry, and works in the yard. A.R. 33, 238. The ALJ "[gave] some weight to these reports as they support [plaintiff] has more abilities and activities than alleged" and "this activity is

8

consistent with limited treatment and objective exam findings," which he later described as "mostly normal findings." A.R. 32–33. Plaintiff disputes the ALJ's characterization of Walker's report as incomplete. For example, he says, Walker said that plaintiff does some chores but that she has to check on him to make sure he's paying attention. A.R. 238. That's true, but neither that additional context nor any of the other evidence he points to undermines the ALJ's conclusion that plaintiff's daily activities are less restricted than he let on.

The ALJ also considered plaintiff's treatment history, saying that "the record supports some non-compliance with treatment with running out of medications and not showing up for appointments" and that "his gaps in treatment and not taking medications as prescribed are contrary to his allegations." A.R. 32. For this, he cites to an October 2014 medical record noting that plaintiff's "meds are working well" but he "reports he is out of meds but would like to resume them" and another from July 2014 saying plaintiff was a "no show" for an appointment. A.R. 32, 299, 338. The ALJ went on to note that plaintiff improves when on medication; that he reports that the voices he hears tell him to do things, but the medical records say they call his name and aren't command hallucinations; and that he had recently gone off medication and was saying he felt "fine." A.R. 32.

The ALJ was allowed to draw a negative credibility inference from plaintiff's treatment non-compliance. *See* SSR 16-3P, 2017 WL 5180304 (Oct. 25, 2017) ("[I]f the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, or if the individual fails to follow

9

prescribed treatment that might improve symptoms, we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record."). But for the ALJ to draw that inference, he first had to consider other reasons why plaintiff may not have been complying with or seeking treatment. *See id.* ("We will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints."); *Paul v. Berryhill*, 760 Fed.App'x 460, 465 (7th Cir. 2019) ("ALJs assessing mental illness … must consider possible alternative explanations before racing to conclusions about noncompliance with medical directives."); *Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008). The record suggests several reasons why plaintiff might have had treatment gaps—lack of insurance, A.R. 407 ("Reports ppl keep turning him away because he has no insurance" and "[s]tates he has applied for Medicaid, but was turned down and is currently fighting for his Disability");[6] cost, A.R. 403 ("complaining of cost of med"); side effects, A.R. 393 ("Haldol may be causing some restless legs at night"); and the cycle of mental illness frustrating a person's ability to seek or comply with treatment. *See Kangail v. Barnhart*, 454 F.3d 627, 630 (7th Cir. 2006) ("[M]ental illness in general … may prevent the sufferer from taking her prescribed medicines or otherwise submitting to treatment." (citation omitted)).

---

[6] The Commissioner notes that plaintiff testified at the hearing that he did have health insurance. That he had health insurance at the time of the hearing in 2016 does not negate the possibility that plaintiff did not have insurance at the time of the treatment gaps.

10

The ALJ erred by not considering alternative reasons for why plaintiff was "non-compliant" with treatment.

Even so, the Commissioner points out that "an ALJ's credibility assessment will stand as long as there is some support in the record." *Berger v. Astrue*, 516 F.3d 539, 546 (7th Cir. 2008) (cleaned up). The ALJ had other reasons for his credibility determination (like plaintiff's daily activities, as explained above), and plaintiff doesn't make any other arguments challenging the credibility determination. *See id.* (affirming denial of benefits where the ALJ questioned the claimant's allegation of pain because of his failure to pursue treatment options even though it could be explained by lack of insurance or money since there was other support for the credibility determination). The ALJ's credibility determination was not patently wrong, despite his error in not adequately discussing other reasons for plaintiff's treatment non-compliance.

## IV. Conclusion

The Commissioner's motion for summary judgment [24] is denied. The Commissioner's decision is reversed, and the case is remanded for further proceedings consistent with this opinion. Enter judgment and terminate case.

ENTER:

/s/ Manish S. Shah
Manish S. Shah
United States District Judge

Date: August 27, 2019

11